# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| TYQUAN STEWART, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No.: 1:18-CV-286 |
| CITY OF FORT WAYNE, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants City of Fort Wayne and Fort Wayne police officers Christian Lichtsinn, C. Smith, J. Lemish, and Ryan Tosland (ECF 39). Plaintiff Tyquan Stewart filed a response in opposition to the motion (ECF 45) and the Defendants filed a reply brief (ECF 46). For the reasons set forth below, the motion for summary judgment is GRANTED and this case is DISMISSED WITH PREJUDICE.

## BACKGROUND

The events giving rise to this lawsuit were captured on video and audio recordings. On September 6, 2018, Tyquan Stewart was driving a black Dodge sedan southbound on Gaywood Drive in Fort Wayne. Fort Wayne police officer Christian Lichtsinn, driving a fully marked police cruiser, was behind Stewart's vehicle. Stewart turned left, or east, from Gaywood Drive onto East Fairfax Avenue without using his turn signal. Stewart drove one block on Fairfax, then turned right (or south) onto Smith Street (using his turn signal this time, although he did so less than 200 feet before turning, which is also a violation). Lichtsinn turned on his emergency lights and initiated a traffic stop immediately after turning onto Smith Street.

Lichtsinn approached the black Dodge, told Stewart that he had made an illegal turn from Gaywood onto Fairfax, and asked Stewart and his female passenger, Ti-Shaya Dorkins, for identification and proof of insurance. Stewart and his passenger produced identification but indicated that they could not find proof of insurance. Lichtsinn told them to keep looking while he returned to his patrol car to look up Stewart and Dorkins on his computer. When he did so, he learned that Stewart did not have a valid driver's license and that Dorkins was the subject of an active warrant out of Michigan. Lichtsinn returned to the Dodge and informed Stewart that he did not have a valid driver's license and that Dorkins had a pending warrant in Michigan. Lichtsinn told both Stewart and Dorkins to exit the Dodge. He placed Dorkins in handcuffs and placed her in the back seat of his patrol car. Officer Lichtsinn conducted a brief sweep of the front passenger compartment checking for weapons and found a small pocket knife in plain sight, which he removed from the vehicle. After a few minutes, Lichtsinn as able to ascertain that Michigan did not want to extradite Dorkins and so Lichtsinn removed the handcuffs and let Dorkins out of the patrol car. Once she was out of the patrol car, Dorkins informed Officer Lichtsinn that Stewart had "just bought [the car] for me" and that she had not yet obtained insurance for the vehicle. Because Stewart did not have a valid driver's license and the Dodge was not insured, Officer Lichtsinn informed them that the car could not be driven and was going to be towed and impounded. Officers Smith, Lemish and Tosland arrived on the scene within minutes after Lichtsinn pulled Stewart over. Since the Dodge was not insured, the officers summoned a tow truck to remove the vehicle to an impound lot. While waiting for the tow truck to arrive, the officers conducted an inventory search of the Dodge, pursuant to Fort Wayne Police Department policy, briefly examining the passenger compartment, back seat and trunk. Nothing was taken or

"seized" from the vehicle except the small knife Lichtsinn had removed a few minutes earlier. Before the Dodge was placed on a flatbed, both Stewart and Dorkins were permitted to retrieve any personal items from the car. Stewart was issued three citations: one for failing to signal a turn, one for driving without a valid driver's license, and one for driving an uninsured vehicle. Stewart was also issued a citation for littering.[1] Once the Dodge was secured on the tow truck, the officers told Stewart and Dorkins they were free to go; neither person was arrested. Stewart challenged the citations he was issued in state court but was found guilty of all charges following a bench trial on February 12, 2019.

Throughout the encounter between Plaintiff and Defendants, Stewart complains–loudly and repeatedly–that Lichtsinn could not have possibly seen whether Stewart used his turn signal and that the officers were violating his constitutional rights when they conducted an inventory search of the Dodge. Stewart asks for each officer's name and badge number, and tells them that he intends to "file a lawsuit against you in federal court."

All of the underlying facts just recited are undisputed except for one: Stewart argues that Lichtsinn had no probable cause to pull him over in the first place, arguing that Lichtsinn was either too far behind Stewart to see whether he used his turn signal (and insists that he did) or that Lichtsinn's purported reason for the stop was disingenuous. The videotape evidence, however, shows otherwise.

In his Complaint, Stewart alleges claims for "false arrest/false imprisonment" and "illegal

---

[1] During the course of the traffic stop, Stewart was smoking a cigarette, which he tossed on the ground. The officers told Stewart he was littering and to pick up the cigarette. Stewart picked up the cigarette but then tossed it on the ground again. Officer Tosland then wrote Stewart a citation for littering. Affidavit of Ryan Tosland (ECF 39-2), ¶¶ 9-17.

search or seizure," contending that the Defendant officers violated his Fourth Amendment rights when they "unlawfully detained me without probable cause" and "illegally searched the vehicle without any probable cause." Amended Complaint (ECF 36), p. 7. Stewart also asserts several state law tort claims against the Defendants, including "slander def[a]mation of character," "false pretense under false light," and "retaliation." *Id.*, pp. 8-9. Stewart also apparently is asserting claims for intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. *Id.*, p. 3. Stewart also argues in his Amended Complaint that the Defendant "officers did this to retaliate against me because of the prior lawsuits I've filed against the City of Fort Wayne and their fellow police officers" (*id.*, p. 2) and states repeatedly that their actions caused him "emotional distress, mental anguish, humiliation, and fear[]" (*id.*, pp. 7, 8 and 9).

## SUMMARY JUDGMENT STANDARD

Federal Rule 56 states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Supreme Court has explained that "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "'If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial.'" *Simpson v. Gen. Dynamics Ordnance & Tactical Sys.-Simunition Operations, Inc.*, 2019 WL 6912332, at *2 (N.D. Ind. Dec. 19, 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Id*. (citing *Frakes*

4

*v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Id*. Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

"Summary judgment is a critical moment for a non-moving party. It must 'respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.'" *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018) (quoting *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017)). "Inferences supported only by speculation or conjecture will not suffice." *Id*. (citing *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721-22 (7th Cir. 2018)). "Neither will the mere scintilla of evidence." *Id*. (citing *Grant*, 870 F.3d at 571).

## DISCUSSION

**I. Fourth Amendment claims.**

### A. Traffic stop.

As to Stewart's claim that the traffic stop was constitutionally infirm, the Defendants argue as follows:

> Plaintiff cannot create a genuine issue of material fact regarding whether he committed a traffic violation because [Lichtsinn's] squad car video clearly depicts Plaintiff failing to signal his turn in violation of Indiana law. Accordingly, any testimony that Plaintiff did not violate any traffic laws is plainly contradicted by the record and a reasonable jury could not find that the traffic stop was not supported by probable cause. Second, Plaintiff cannot create a genuine issue of material fact regarding whether the traffic stop was supported by probable cause because he was found to have committed a traffic violation at a State Court bench trial. Under the doctrines of collateral estoppel and *Heck v. Humphrey*, the State Court ruling against Plaintiff precludes Plaintiff from now arguing that he did not commit any traffic violations.

Memorandum in Support of Defendants' Motion for Summary Judgment (ECF 40), p. 9. In support of their argument, the Defendants submitted an affidavit from Officer Lichtsinn and the video and audio recordings of the incident. In his affidavit, Lichtsinn makes the following sworn statements regarding the traffic stop:

> While on patrol [on September 6, 2018], I was following a black Dodge Charger . . . that failed to signal its turn when making a left hand turn from Gaywood to Fairfax as required by Indiana law. Accordingly, I activated my squad car's lights and siren to initiate a traffic stop of the Dodge. After I had initiated the traffic stop, but before the Dodge stopped, I observed the Dodge fail to signal a turn more than 200 feet before turning right from Fairfax to Smith as required by Indiana law.

Affidavit of Christian Lichtsinn (ECF 39-1), ¶¶ 7-9. The videotape, which the Court has viewed several times, confirms Lichtsinn's version of events. Stewart made a left turn from Gaywood to Fairfax without using his turn signal. Lichtsinn Patrol Car Video (ECF 41).[2] The videotape also

---

[2] The Court viewed all the videos submitted. The Defendants submitted videotapes from the patrol cars of Lichtsinn, Smith and Tosland (ECF 41). Lichtsinn's patrol video begins when he is behind Stewart on Gaywood and continues through the traffic stop. Lichtsinn's lapel

confirms that Stewart turn from Fairfax onto Smith but clearly did not use his signal more than 200 feet before turning. *Id*. Stewart's argument that Lichtsinn was too far behind him to determine whether he used his turn signal when turning from Gaywood is refuted by the videotape. Stewart does not dispute (or even mention) that he failed to use his turn signal more than 200 feet before turning onto Smith. In any event, even if Lichtsinn was mistaken about Stewart's failure to signal his left turn, he still had probable cause to pull Stewart over if, under the circumstances, the officer "ha[d] probable cause to believe that a traffic violation has occurred." Defendants' Memorandum, p. 8 (citing *Whren v. United States*, 517 U.S. 806, 810 (1996) and *United States v. Smith*, 668 F.3d 427, 430 (7th Cir. 2012)). The videotape confirms that Lichtsinn had probable cause to believe Stewart committed traffic violations and, therefore, probable cause to initiate a traffic stop.

Given the Court's conclusion that the evidence supports Lichtsinn's determination that Stewart had committed a traffic violation, Stewart's claim that his Fourth Amendment rights were violated when he was pulled over fails as a matter of law. Furthermore, as the Defendants point out, Stewart challenged the tickets he received at a state court bench trial and was adjudged guilty, precluding his argument that Lichtsinn was not justified in making the stop.

The law on this issue, which is well established, precludes Stewart's claim that the traffic stop was unjustified under the circumstances. As this Court has explained:

---

microphone contains the audio from the entire encounter. The videos from the other officers' patrol cars, which recorded the events from the time Stewart was stopped until the time everyone left the scene. *Id*. Stewart also submitted a video of the encounter, which was taken by a bystander (ECF 44). That video also begins after Stewart pulled over and ends a few minutes before Stewart, Dorkins and the officers left the scene. That "bystander" video depicts the same events and actions depicted in the officers' patrol car videos. It adds nothing new, different or contrary and actually confirms the officers' version of events.

> [T]he decision to stop a vehicle is reasonable where the police have probable cause to believe a traffic violation has occurred. *See, e.g., Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *United States v. Williams*, 106 F.3d 1362, 1365 (7th Cir. 1997). Upon witnessing Cooley commit the traffic violation of failing to signal, Ind. Code § 9-21-8-25 (1992), when he turned right onto Washington Street, the police clearly had probable cause to believe a traffic violation had occurred. Indeed, probable cause only requires a substantial chance of a violation, not an actual showing of such activity. See, e.g., *United States v. Lima*, 819 F.2d 687, 688 (7th Cir.1987); *see also Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (noting that the probable cause determination does not even require that an officer's belief be more likely true than false).

*United States v. Cooley*, 119 F.Supp.2d 824, 827 (N.D. Ind. 2000). In another case addressing the issue of traffic stops, this Court explained as follows:

> The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (stating that the Fourth Amendment's protection against "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles"). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. Any ulterior motive an officer may have for making the stop is irrelevant. *United States v. Bass*, 325 F.3d 847, 850 (7th Cir.2003) (citing *Whren*, 517 U.S. at 813).
>
> The Supreme Court has "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *see also Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (noting that "roadside encounters between police and suspects are especially hazardous"); *Maryland v. Wilson*, 519 U.S. 408, 413, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (noting the same risk applies "whether the occupant of the stopped car is a driver or passenger"); *United States v. Denney*, 771 F.2d 318, 321 (7th Cir.1985) ("[Investigative detentions involving suspects in vehicles at the roadsides are especially dangerous to the police officers."). Because of these dangers, an officer may order a vehicle's occupants out of the car during a routine

> traffic stop. *Wilson*, 519 U.S. at 410; *United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005). Alternatively, if the officer has a reasonable suspicion that the driver or passenger is armed or may be able to gain immediate control of a weapon, he may conduct a protective search of the passenger compartment for accessible weapons. *Long*, 463 U.S. at 1049-50; *United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004).

*United States v. Schlatter*, 2010 WL 1568600, at *3 (N.D. Ind. Apr. 19, 2010), *aff'd*, 411 F. App'x 896 (7th Cir. 2011). And as the Court explained in yet another case involving a traffic stop:

> As a general rule, a traffic stop does not violate the Fourth Amendment any time the police have probable cause to believe that a traffic violation has occurred. *United States v. Smith*, 668 F.3d 427, 430 (7th Cir.2012); *see also United States v. Cashman*, 216 F.3d 582, 586 (7th Cir.2000) ("[S]o long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver."). . . .
>
> "A stop and search can be reasonable even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred." *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006); *see also United States v. Hernandez-Rivas*, 513 F.3d 753, 759 (7th Cir. 2008) ("[P]robable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense."); *Cashman*, 216 F.3d at 587 (the "propriety of the traffic stop does not depend, in other words, on whether [defendant] was actually guilty of committing a traffic offense. . . . The pertinent question instead is whether it was reasonable for [the police officer] to believe that the [traffic violation had occurred]." (emphasis in original)).

*United States v. Sellers*, 897 F.Supp.2d 754, 761 (N.D. Ind. 2012).

In the present case, Lichtsinn had probable cause to initiate the traffic stop due to Stewart's failure to properly signal his turns and the videotape supports Lichtsinn's stated reason for doing so. Consequently, the Defendants are entitled to judgment as a matter of law on Stewart's claim that the traffic stop violated his Fourth Amendment rights.

**B. Search and seizure of vehicle.**

Stewart claims that the Defendant officers violated his constitutional right to be free from unreasonable search and seizure when they conducted an inventory sweep of the Dodge before it was towed. Stewart does not contest that police have a right to conduct an inventory search of an impounded vehicle, but insists in his brief that "this is done at the time the car is impounded and not on the roadside." Plaintiff's Response to Summary Judgment (ECF 45), p. 3. Since the Defendant officers in this case conducted an inventory search before the Dodge was loaded onto a flatbed tow truck, Stewart complains that the search was rendered constitutionally infirm. Once again, however, Stewart is mistaken. Stewart does not contest the fact that his driver's license was invalid or that the Dodge was uninsured. Given those undisputed facts, the Defendant Officers were justified in impounding the vehicle since, as Lichtsinn states in his affidavit, "[b]ecause the Dodge was not insured, no one could legally drive the Dodge away from the scene." Lichtsinn Affidavit, ¶ 39. Stewart's assertion that the inventory search was illegal because it was performed "on the roadside" is wrong. Once again, the law in this point is well established.

The Seventh Circuit has explained that "[i]nventory searches are a recognized exception to the warrant and probable-cause requirements of the Fourth Amendment." *United States v. Cherry*, 436 F.3d 769, 772-73 (7th Cir. 2006) (citing *United States v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991)). Searches conducted by the police *prior to towing a car* are "lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property–and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *Id*. (quoting *Pittman*, 411 F.3d at 817) (italics added). The Seventh Circuit has also explained that for an inventory search to be valid, the impoundment of the vehicle must be valid. *U.S. v. Jensen*,

169 F.3d 1044, 1048 (7th Cir. 1999). "[T]he Seventh Circuit [has] reiterated that 'warrantless inventory searches of impounded vehicles by authorities pursuant to a standard police policy or procedure do not violate the Fourth Amendment.'" *United States v. Davis*, 185 F.Supp.2d 942, 949 (S.D. Ill.), *aff'd*, 50 F. App'x 313 (7th Cir. 2002) (quoting *U.S. v. Jackson*, 189 F.3d 502, 508 (7th Cir.), *cert. denied*, 528 U.S. 979, 120 S.Ct. 432, 145 L.Ed.2d 338 (1999)). In this case, the Defendant Officers impounded the Dodge because it was uninsured and could not be driven from the scene as a matter of law.³ Given that the "seizure" of the vehicle was justified, so too was the inventory search. Also, Stewart's contention that the inventory search was somehow invalid because it was conducted on the roadside instead of later at an impound lot is simply incorrect. This Court has also explained that inventory searches of vehicles that are legally impounded do not violate the Fourth Amendment. In *Trigg v. Fort Wayne Police Dep't.*, the Court explained as follows:

> The Fourth Amendment prohibits warrantless searches, unless the search falls under one of the recognized exceptions to the warrant requirement. *U.S. v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). *Inventory searches constitute one such exception*. *See U.S. v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (citing *U.S. v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991)). "Searches conducted by the police *prior to towing a car are lawful* if conducted pursuant to standard police procedures aimed at protecting the owner's property–and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *Id*. (internal quotation marks and citation omitted). As noted by the Seventh Circuit, the Supreme Court has recognized that:
>
>> local police departments routinely inventory and secure the contents of impounded automobiles. Doing so protects the police from potential danger, protects the owner's property while it remains in police custody, and

---

³ Indiana Code § 9-25-8-6 prohibits anyone from operating a motor vehicle without insurance. Thus, even if Stewart's passenger, Ms. Dorkins, had a valid operator's license (the record does not reveal whether she did), she could not drive the vehicle from the scene of the stop.

> protects the police against claims of lost, stolen, or damaged property. An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment. The decision to impound (the "seizure") is properly analyzed as distinct from the decision to inventory.
>
> *U.S. v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010) (internal citations, quotation marks, and brackets omitted in original).

*Trigg v. Fort Wayne Police Dep't*, 2016 WL 1089842, at *7 (N.D. Ind. Mar. 21, 2016).

The Court has already concluded that in the present case the traffic stop was justified since Lichtsinn had probable cause to stop Stewart for traffic violations. Once Lichtsinn confirmed that there was no insurance on the Dodge he had the vehicle impounded according to Indiana law. When that decision was made, the officers conducted a brief inventory search of the vehicle before it was removed from the scene. This action was also proper and legal under the circumstances. Accordingly, the Defendants are entitled to summary judgment on Stewart's claim that the inventory search violated his Fourth Amendment rights.

In his response in opposition to the Defendants' motion, Stewart simply repeats the general themes he espoused in his Amended Complaint; that is, that Lichtsinn had no justification to pull him over (i.e., that Lichtsinn was mistaken or lied about Stewart's failure to use a turn signal) and that the officers had no justification for searching the Dodge before it was placed on a flatbed tow truck and impounded. Plaintiff's Response, generally. However, the evidence–specifically the videotape from Lichtsinn's patrol car–defeats Stewart's attempt to create a material issue of fact as to the validity of the initial traffic stop. His second argument–that the inventory search of the Dodge was constitutionally infirm–is flat-out wrong as

a matter of law. Accordingly, the Defendants are entitled to summary judgment on this claim.

**II. State law tort claims.**

As stated above, Stewart also included in his Complaint several state law tort claims, including negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, slander or defamation, "false pretense under false light," and "retaliation." Amended Complaint, pp. 8-9. All of these claims are based on Stewart's assertion that his encounter with the Defendants caused him "emotional distress, mental anguish, humiliation, fear, and caused problems between me and family members. This was done maliciously." Amended Complaint, p. 7. His "slander/defamation" claim is based on the fact that during the traffic stop, Lichtsinn mistakenly informed Stewart that he had an "alert" for being an individual known to carry weapons. Stewart alleges that Lichtsinn "stated that I was known to carry weapons, which is a lie. I have never been known, or charged for carrying a weapon. Officer [Lichtsinn] made these statements in front of roughly 20 people who is citizens from the neighborhood where I was pulled over. The officer did this maliciously, so that citizens would view me in false light." *Id.*, p. 8. In his affidavit, Lichtsinn concedes that the alert for "party armed" was a mistake. Lichtsinn Affidavit, ¶ 22. However, Lichtsinn also states that he "would not have taken any different actions on September 6, 2018[,] had I known that Plaintiff did not have a party armed alert attached to his name." *Id.*[4] Stewart claims this was not a mistake and that Lichtsinn was deliberately slandering or defaming Stewart when he told him, allegedly within earshot of

---

[4] While Lichtsinn was mistaken about Stewart having an alert as a "party armed," Stewart did have "several alerts attached to his name in the FWPD system. Specifically, Plaintiff had alerts for being a convicted felon and a known resistor and was also listed as a suspect in a strong-arm robbery." *Id.*, ¶ 21.

bystanders, that Stewart had a "party armed" alert. In the end, though, it doesn't matter, since as the Defendants point out, the Indiana Tort Claims Act precludes Stewart's state law claims. As this Court has explained:

> Under the law enforcement immunity provision of the Indiana Tort Claims Act, a governmental employee "acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of . . . a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code 34-13-3-3(8). Other than tort claims expressly carved out by statutory limits or affirmative obligations imposed on law enforcement (such as claims of false arrest), police officers have immunity from Indiana tort claims, *including claims for negligence and intentional infliction of emotional distress arising from their actions in effecting arrests while engaged in law enforcement duties.* *Ashcraft v. City of Crown Point*, 2013 WL 5934612 at *6 (N.D.Ind. 2013); *Ferris v. Williams*, 2012 WL 6201074 at * (S.D.Ind. 2012). Such immunity doesn't apply to torts such as assault and battery. *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind.2010). But "'add on' claims such as negligence and intentional infliction of emotional distress do not survive simply because they are a product of improper conduct." *Struck v. Town of Fishers*, 2013 WL 1149718 at  (S.D.Ind. 2013), citing *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind.Ct.App. 2002).

*Chapman v. Indiana*, 2014 WL 1831161, at *4 (N.D. Ind. May 8, 2014).

It is well established, then, that "[p]olice officers have immunity from Indiana tort claims, like intentional infliction of emotional distress, arising from their actions while engaged in law enforcement duties[.]" *Estate of Pearson ex rel. Pearson v. City of Fort Wayne, Ind.*, 2015 WL 4425981, at *13 (N.D. Ind. July 20, 2015). *See also*, *Quakenbush v. Lackey*, 622 N.E.2d 1284 (Ind. 1993); *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278 (Ind. 1994); *Jordan v. City of Indianapolis*, 2002 WL 32067277, at *11 (S.D.Ind. 2002) (Indiana grants immunity for negligent and intentional torts committed while effecting an arrest); *City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind.Ct.App. 1999) (ITCA bars recovery on claims of negligent and intentional infliction of emotional distress). Accordingly, consistent with the case

law, the Defendants enjoy immunity from Stewart's claims of negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, slander or defamation, "false pretense under false light," and retaliation.

### III. Municipal liability.

In addition to the individual officers, Stewart named the City of Fort Wayne as a defendant. His theory of liability is that "[t]hese officers are employed by the City of Fort Wayne who is liable for their actions at the time of this incident." Amended Complaint, p. 7; Plaintiff's Response Brief, p. 4 ("The City of Fort Wayne is liable for their employees including [the Defendant officers] who were working under the scope[] of their employment at the time of this material event."). The Defendants correctly point out, however, that "'[a] municipality cannot be held liable solely because it employs a tortfeasor.'" Defendants' Memorandum, p. 14 (quoting *Monell v. Dep't. of Social Services of N.Y.*, 436 U.S. 658, 691 (1978)). In order to state a viable claim against a municipality for the torts of its employees, a plaintiff must show that his "injury was caused by the execution of a municipal policy or custom, rather than by the acts of the municipality's agents[.]" *Id*. As the Defendants correctly note, Stewart's "Complaint makes no allegation that the City's customs and policies caused an alleged violation of Plaintiff's rights. Where there is no basis for municipal liability pled, a Section 1983 claim against a municipality cannot stand." *Id*., p. 15 (citing *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985) ("'Because a municipality can be held liable only for its regular procedures, not for the isolated independent tort of an individual employee, some fact indicated such procedures must appear in the complaint.")). More importantly, however, as the Defendants point out, is that they are "entitled to judgment as a matter of law" because Stewart's federal claims for illegal search and

15

seizure are "barred by the existence of probable cause. And Plaintiff's remaining state law claims are barred by the immunities set forth in the Indiana Tort Claims Act." Defendants' Memorandum, p. 16. The Defendants are correct again and the City of Fort Wayne, along with the individual officers, is entitled to summary judgment on Stewart's claim or claims against it.

## CONCLUSION

For all the reasons set forth above, the Defendants' motion for summary judgment (ECF 39) is GRANTED and this case is DISMISSED WITH PREJUDICE.

Date: January 21, 2020.

/s/  William C. Lee
William C. Lee, Judge
U.S. District Court
Northern District of Indiana